**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JEFFREY PARKER, on behalf of himself and all others similarly situated,

Plaintiff,

-against-

COULTER VENTURES, LLC, d/b/a ROGUE FITNESS,

Defendant.

---

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, JEFFREY PARKER ("Plaintiff" or "Mr. Parker"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs" or the "Class"), by and through his undersigned counsel, brings this action against Coulter Ventures, LLC d/b/a Rogue Fitness ("Rogue Fitness" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., arising from Defendant's failure to ensure that its e-commerce website, www.roguefitness.com (the "Website"), is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff JEFFREY PARKER is a legally blind resident of Bronx County, New York, residing at 6355 Broadway, Bronx, New York 10471. According to a November 12, 2025, eligibility certification issued by Dr. Claudette Lomonaco, OD, of 3626 E. Tremont Avenue, Bronx, New York, prepared for the New York State Commission for the Blind and Visually Handicapped ("CBVH"), Mr. Parker has been diagnosed with blindness in his better eye with a visual field limitation of less than 20 degrees, caused by Retinitis Pigmentosa, a hereditary, progressive degenerative retinal disease that destroys photoreceptor cells and produces severe, irreversible peripheral and eventually central vision loss. Dr. Lomonaco's certification confirms

that Mr. Parker's visual field constriction meets both the federal and New York State statutory definitions of legal blindness. *See* Exhibit A. Because of the severity and permanence of his condition, Mr. Parker cannot read standard print, cannot recognize product photography or graphics, and cannot otherwise visually navigate a digital screen.

2. Because of his permanent and irreversible vision loss, Mr. Parker relies exclusively on screen-reader software, including JAWS (Job Access With Speech), to navigate digital interfaces, read product information, and complete online transactions. When a website is properly coded, JAWS can identify product images, read labels, announce interactive controls, and allow blind consumers to shop independently. When a website is not properly coded, JAWS cannot interpret essential content, rendering the site unusable for blind users.

3. Defendant Coulter Ventures, LLC owns, operates, and controls the commercial retail Website, www.roguefitness.com, through which it markets and sells premium fitness equipment, strength-training products, conditioning tools, and related accessories to consumers nationwide, including in New York. Defendant's product catalog includes rowing machines, ski trainers, barbells, racks, plates, kettlebells, benches, and other specialized training equipment used by home consumers, commercial gyms, and professional athletic facilities.

4. On three separate occasions — July 9, 2026; July 25, 2026; and August 24, 2026, Mr. Parker attempted to browse, evaluate, and purchase specific products from Defendant's Website using JAWS but was denied full and equal access because of the Website's pervasive accessibility barriers. During these visits, Mr. Parker specifically attempted to research and purchase the Rogue Echo Rower; the Rogue Echo Ski Trainer; and related conditioning packages sold exclusively on Defendant's Website. These products are not available through third-party

retailers in the same bundled configurations, making Defendant's Website the only source from which Mr. Parker could obtain them.

5. During each visit, Mr. Parker encountered multiple accessibility barriers that prevented him from completing his intended purchases, including missing or non-descriptive alternative text on product images, unlabeled and inaccessible interactive controls, empty buttons, broken ARIA attributes, inaccessible dynamic regions, improperly structured navigational landmarks, and accessible names for interactive controls that bear no relationship to the visible text a sighted shopper sees on the screen. These barriers prevented JAWS from announcing essential product information, including pricing, package contents, configuration options, and customer reviews, and prevented Mr. Parker from adding products to his cart or completing checkout.

6. Automated accessibility audits confirm that the barriers Mr. Parker encountered are neither isolated nor incidental. Independent Wave and SortSite accessibility validation reports of www.roguefitness.com — including scans documenting missing alternative text, empty links, invalid ARIA bindings, unlabeled buttons, inaccessible modal dialogs, and broken JavaScript files — confirm that the defects Mr. Parker personally experienced are pervasive and systemic across the Website, not confined to the handful of pages he visited. These audits reveal widespread WCAG 2.1 Level A and AA violations across hundreds of pages, demonstrating that Defendant's accessibility failures are structural and longstanding. See Exhibits B and C.

7. Notably, this is not the first time Defendant has been sued over these deficiencies. In 2022, a legally blind New York resident sued Coulter Ventures, LLC in the United States District Court for the Southern District of New York, alleging that www.roguefitness.com was inaccessible to blind users because of missing alternative text, unlabeled buttons, broken links, and

other screen-reader barriers. See Ramon Jaquez v. Coulter Ventures, LLC, No. 1:22-cv-05150 (S.D.N.Y. filed June 19, 2022). That action settled on or about November 30, 2022. Rather than remediate its Website in response to that lawsuit, Defendant, upon information and belief, did nothing of substance. Four years later, the very same categories of barriers alleged in 2022 — missing alternative text, empty buttons, broken ARIA attributes, inaccessible dynamic regions, and unlabeled interactive elements — remain rampant across the Website, now independently confirmed by current automated audits performed in connection with this action. Defendant's failure to correct known, previously litigated barriers over a period of years demonstrates a pattern of deliberate indifference to the rights of blind consumers, rather than an isolated oversight.

8. Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA.Plaintiff seeks a permanent injunction requiring Defendant to remediate the Website's accessibility barriers, adopt accessibility policies and governance, and ensure that the Website is — and remains — fully accessible to blind and visually impaired consumers in substantial conformance with the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA.

**<u>JURISDICTION AND VENUE</u>**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, as Plaintiff alleges violations of Title III of the Americans with Disabilities Act ("ADA"), a federal civil rights statute. Supplemental jurisdiction over Plaintiff's state and city law claims is proper under 28 U.S.C. § 1367.

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 of the New York Executive Law § 290 *et seq.* ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"), and the New York State Civil Rights Law, Article 4, §§ 40 and 40-c ("NYCRL").

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in Bronx County, accessed and attempted to use the Website from his home within this District, and suffered injury here. A substantial part of the discriminatory conduct giving rise to this action — including the denial of equal access to Defendant's online goods, services, and digital content — occurred within this District.

12. Defendant Coulter Ventures, LLC d/b/a Rogue Fitness conducts substantial, continuous, and systematic business within this District by marketing, advertising, and selling fitness equipment, strength-training products, and conditioning tools to New York consumers through its highly interactive retail Website, www.roguefitness.com. Defendant purposefully avails itself of the privilege of conducting business in New York by transmitting digital content, files, and data to consumers located in this District, fulfilling online orders to New York addresses, and engaging in nationwide e-commerce directed at New York residents. Courts within this Circuit have consistently held that such purposeful, repeated online commercial activity constitutes sufficient minimum contacts for personal jurisdiction. See Reed v. 1-800-Flowers.com, Inc., 327 F. Supp. 3d 539 (E.D.N.Y. 2018); Andrews v. Blick Art Materials, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); Ford Motor Co. v. Mont. Eighth Judicial Dist. Court, 592 U.S. ___ (2021); South Dakota v. Wayfair, Inc., 585 U.S. ___ (2018); Romero v. 88 Acres Foods, Inc., 2022 U.S. Dist.

LEXIS 9040 (S.D.N.Y. Jan. 18, 2022); Sanchez v. NutCo, Inc., 2022 U.S. Dist. LEXIS 51247 (S.D.N.Y. Mar. 22, 2022).

13. Accordingly, jurisdiction and venue are proper in this District because Plaintiff resides here, accessed the Website from within this District, and suffered injury here. Courts within this Circuit have consistently held that website accessibility barriers encountered by users within the District provide a sufficient basis for personal jurisdiction over website operators whose digital platforms target or serve New York consumers, and Defendant's own history of having been sued in this Circuit for the same conduct, see Exhibit D, forecloses any argument that it lacks fair notice of suit here.

## THE PARTIES

14. Plaintiff JEFFREY PARKER is a legally blind resident of Bronx County, New York. As documented in a November 12, 2025 eligibility certification by Dr. Claudette Lomonaco, OD, prepared in connection with the New York State Commission for the Blind and Visually Handicapped, Mr. Parker has been diagnosed with blindness in his better eye with a visual field limitation of less than 20 degrees due to Retinitis Pigmentosa. This condition is permanent, progressive, and without cure. Because of his irreversible vision loss, Mr. Parker relies exclusively on screen-reader software, including JAWS, to navigate digital interfaces, read product information, and complete online transactions independently. Mr. Parker regularly purchases fitness equipment online because he cannot visually inspect products in physical retail environments, and he depends on accessible digital interfaces to evaluate specifications, compare models, and complete purchases safely and independently.

15. Defendant Coulter Ventures, LLC d/b/a Rogue Fitness is a business entity that owns, operates, controls, and maintains the commercial retail Website www.roguefitness.com,

which markets and sells premium fitness equipment, strength-training products, conditioning tools, and related accessories to consumers nationwide, including residents of New York. The Website functions as a fully interactive online retail store and a primary channel through which Defendant advertises, promotes, and sells its merchandise, including specialized equipment such as the Rogue Echo Rower, Rogue Echo Ski Trainer, and bundled conditioning packages. Defendant is responsible for ensuring that the Website is designed, coded, and maintained in a manner that is accessible to individuals who rely on screen-reading technology.

16. Defendant markets, advertises, and sells its products directly to New York consumers through its Website, transmits digital content to users located in this District, and maintains a highly interactive online platform that enables consumers to browse products, review specifications, select configurations, compare packages, and complete purchases. The Website includes detailed product pages — such as the Rogue Echo Rower & Rogue Echo Ski Package — that present images, descriptions, specifications, pricing, and purchasing information to consumers nationwide. Defendant's Website is the exclusive channel through which certain bundled products and configurations are sold, making accessible digital access essential for blind consumers seeking to purchase these items. Defendant is responsible for ensuring that its Website is designed, constructed, and maintained in a manner that is compatible with screen-reader technology and accessible to blind and visually impaired individuals.

17. At all relevant times, Defendant has continuously conducted business within the Southern District of New York by offering its goods and services to residents of this District through its Website and by repeatedly transmitting digital content, files, and data to consumers located here. Defendant fulfills online orders to New York addresses, markets its products to New York residents, and operates a nationwide e-commerce platform directed at consumers within this

District. Defendant's ongoing operation of a highly interactive retail Website directed at New York consumers constitutes continuous and systematic business activity within this District.

## NATURE OF ACTION

18. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*, challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines ("WCAG 2.1") constitutes unlawful discrimination and violates federal accessibility standards.

19. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating — for sighted, blind, and visually impaired individuals alike.

20. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

21. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and

NonVisual Desktop Access ("NVDA"), which is open-source. Apple device users rely on VoiceOver. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

22. Plaintiff **Jeffrey Parker** is a blind and visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. §§ 12102(1)–(2), its implementing regulations at 28 C.F.R. § 36.101 *et seq.*, and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software, principally JAWS for Windows.

23. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users cannot access the same content available to sighted users. Screen-reading software translates the visual Internet into an auditory equivalent by reading webpage content aloud at a rapid pace. *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be clicked, which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory — rather than visual — cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."
>
> *See also* American Foundation for the Blind, *Screen Readers*, AFB Technology Guide, noting that approximately 26 million American adults report significant vision impairment. *Id.* at 375.

24. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG 2.0" and "WCAG 2.1"), which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts as the appropriate benchmark for ADA compliance.

25. Non-compliant websites pose recurring barriers to blind and visually-impaired users. Common violations include, but are not limited to:

(a) Missing text equivalents for non-text elements, including product photography

(b) Unlabeled frames and navigation regions

(c) Scripts and auto-playing media without accessible controls, including video that cannot be paused, stopped, or hidden

(d) Inaccessible forms and input fields

(e) Content conveyed solely through visual presentation

(f) Inability to resize text without loss of functionality

(g) Time limits that cannot be adjusted or disabled

(h) Missing, ambiguous, or duplicate page titles

(i) Links and buttons lacking descriptive context, or lacking any accessible name at all

(j) Keyboard focus indicators that are not discernible

(k) Undetectable default language settings

(l) Components that trigger unexpected context changes

(m) Settings that alter context without user notice

(n) Input fields lacking labels or instructions, including inaccessible size and color selectors

(o) Improperly nested markup, duplicate attributes, and non-unique IDs

(p) Accessible names for interactive controls that do not correspond to, or contain, the visible label displayed on screen

(q) User interface elements whose roles and states cannot be programmatically determined (items that can be set by the user cannot be programmatically set and/or notification of changes to these items is not available to user agents, including assistive technology)

**DEFENDANT'S PRIOR NOTICE AND SIX-YEAR FAILURE TO REMEDIATE**

26. Defendant's accessibility failures are not newly discovered. On June 19, 2022, plaintiff Ramon Jaquez, a legally blind resident of New York, filed suit against Coulter Ventures, LLC in the United States District Court for the Southern District of New York, captioned Jaquez v. Coulter Ventures, LLC, No. 1:22-cv-05150. See Exhibit D. The Jaquez complaint alleged that www.roguefitness.com denied blind users full and equal access in violation of Title III of the ADA, the NYSHRL, and the NYCHRL, based on barriers including: (a) missing alternative text on product images; (b) unlabeled buttons and links; (c) inaccessible interactive controls; (d) broken or empty hyperlinks; (e) improperly structured navigational landmarks; (f) inaccessible dynamic regions; and (g) HTML markup errors that prevented screen-reader users from identifying product information, selecting options, or completing purchases. The Jaquez complaint further catalogued Website-wide failures such as duplicate element IDs, empty buttons, non-descriptive link text, inaccessible form fields, and ARIA violations that prevented screen-reader users from navigating

product pages, including pages for Rogue's conditioning equipment, racks, barbells, and accessories.

27. On information and belief, Defendant resolved or settled the Jaquez litigation on or about November 30, 2022, without admitting liability and, critically, without meaningfully remediating the Website's underlying accessibility defects. Had Defendant implemented even baseline WCAG 2.1 Level AA remediation in response to the Jaquez lawsuit — as it was on express notice to do no later than 2022 — the barrier categories identified in that action would not still appear on the Website today.

28. Yet the Wave and SortSite compliance audits performed in connection with this action, more than four years after Jaquez was filed, confirm that the identical categories of barriers persist, site-wide, on www.roguefitness.com to this day. Specifically:

(a) The duplicate, non-unique HTML element IDs alleged in Jaquez — then affecting buttons, form fields, and interactive controls — are today confirmed by SortSite to affect hundreds of Defendant's pages, including recurring duplicate identifiers within product-detail markup, cart-related components, and global navigation elements, in direct violation of the HTML5 specification and WCAG 2.1's programmatic-determination requirements.

(b) The missing alternative text alleged in Jaquez as to product photography is today confirmed by Wave and SortSite to affect large portions of the Website under WCAG 2.1 Success Criterion 1.1.1 (Technique F65), meaning that essential product images — including images of the Rogue Echo Rower, Rogue Echo Ski Trainer, and bundled conditioning packages — remain unlabeled for screen-reader users more than four years later.

(c) The unlabeled buttons and links alleged in Jaquez are today confirmed by SortSite to persist across numerous pages, where anchor elements contain neither text nor an alt-tagged image, in violation of WCAG 2.1 Success Criterion 2.4.4/4.1.2 (Technique F89). These unlabeled controls include primary calls-to-action on product pages, configuration selectors, and cart-related interactive elements.

(d) The broken interactive functionality alleged in Jaquez finds its modern analogue in SortSite's findings that multiple pages contain empty href and src attributes on primary calls to action, including "Shop All" links that resolve to nothing, and that interactive filter regions across the Website's category pages are marked with ARIA role="list" attributes without the required role="listitem" children, stripping screen readers of any ability to announce how many product or filter options exist or to navigate among them.

29. This continuity of defect, spanning more than four years and two independent sets of automated findings separated by different auditors and different tools, establishes that Defendant has had actual, specific, and repeated notice — through prior litigation, through the passage of time, and through the ready availability of free and commercial accessibility-testing tools — that its Website excludes blind consumers, and that Defendant has consciously chosen not to invest in remediation. This history of recidivism is a central basis for Plaintiff's request for injunctive relief with continuing judicial oversight, as set forth below.

## STATEMENT OF FACTS

30. Plaintiff JEFFREY PARKER is a legally blind consumer residing in Bronx County, New York, and is certified by the New York State Commission for the Blind and Visually

Handicapped as legally blind, based on a November 12, 2025 eligibility examination performed by Dr. Claudette Lomonaco, OD, documenting blindness in his better eye with a visual field limitation of less than 20 degrees due to Retinitis Pigmentosa. Retinitis Pigmentosa is a permanent, non-reversible, progressive hereditary retinal disease for which there is no curative treatment. Mr. Parker's remaining vision is insufficient for reading standard print, recognizing product photography, or visually interpreting digital interfaces. As a result, he depends entirely on properly coded, screen-reader-compatible websites to shop independently, evaluate products, and access online information on equal terms with sighted consumers.

31. Retinitis Pigmentosa causes progressive constriction of the visual field, often described as "tunnel vision," which continues to narrow over time and frequently culminates in complete blindness. Mr. Parker's certified visual field of less than 20 degrees leaves him unable to perceive peripheral content on a screen, unable to visually track a cursor, and unable to discern color, contrast, or fine detail in product imagery — deficits that make screen-reader software not a convenience but a necessity for any form of independent digital commerce.

32. Rogue Fitness is a premium American manufacturer of strength-training and conditioning equipment, including rowing machines, ski trainers, barbells, racks, plates, kettlebells, benches, and bundled training packages. Rogue Fitness has cultivated a reputation among fitness enthusiasts, home gym owners, and professional training facilities for durable construction, precision engineering, and consistent product quality. Its Echo-series conditioning equipment — including the Rogue Echo Rower, Rogue Echo Ski Trainer, and the bundled Rogue Echo Rower & Rogue Echo Ski Package — is widely regarded as offering a level of build quality, resistance calibration, and training versatility not readily duplicated by mass-market competitors. Rogue Fitness sells through its own Website, www.roguefitness.com, which functions as the

primary channel through which consumers research specifications, compare models, and purchase equipment not available in comparable configurations from third-party retailers.

33. In the summer of 2026, Mr. Parker began researching conditioning equipment to support his physician-recommended cardio regimen. Because Mr. Parker cannot visually inspect equipment in physical stores, evaluate build quality by sight, or read in-store signage, he — like most blind consumers — conducts the overwhelming majority of his shopping online, where accessible product descriptions, specifications, and screen-reader-compatible purchasing flows can, if properly implemented, substitute for the visual inspection available to sighted shoppers. Mr. Parker specifically selected Rogue Fitness, and its Website, www.roguefitness.com, over the many thousands of other fitness-equipment e-commerce websites available to him, for a combination of reasons: (a) Rogue's Echo-series conditioning equipment is widely recommended for its durability, smooth resistance, and suitability for home use; (b) the Echo Rower and Echo Ski Trainer offer a specific combination of low-impact cardio training that Mr. Parker's physician advised would be appropriate for his condition; (c) Rogue's bundled Echo Rower & Echo Ski Package is not, on information and belief, available from mass-market competitors in comparable quality or configuration; and (d) Rogue's Website advertises detailed specifications, resistance profiles, and product-comparison information that Mr. Parker required to make an informed purchase. Having narrowed his search to Rogue Fitness for these reasons, Mr. Parker required an accessible Website to independently evaluate specific equipment, compare models, read specifications, and complete a purchase — precisely the functions that Defendant's Website denied him.

34. On July 9, 2026, using JAWS on his Windows computer, Mr. Parker navigated to the product page for the Rogue Echo Rower, intending to evaluate the machine as a possible

purchase. Immediately upon the page loading, JAWS announced multiple product images with no descriptive alternative text whatsoever — consistent with Wave and SortSite findings that images across Defendant's Website fail WCAG 2.1 Success Criterion 1.1.1 (Technique F65) because they lack accessible names. As a result, JAWS could only announce "image" or skip the graphic entirely, leaving Mr. Parker unable to determine the rower's frame design, handle configuration, seat construction, or footprint — information a sighted user would obtain instantly from the product photography. When Mr. Parker attempted to navigate to the specifications section, JAWS encountered improperly nested headings and duplicate element identifiers, causing it to repeat announcements out of sequence and lose track of focus. When Mr. Parker attempted to activate the "Add to Cart" control, JAWS announced a generic, repeated accessible name that did not correspond to the visible label, consistent with SortSite's finding that interactive controls across Defendant's Website expose accessible names that bear no relationship to the visible text, in violation of WCAG 2.1 Success Criterion 2.5.3 (Technique F96). Because of these compounding barriers — the wholly undescribed product photography, the disordered heading structure, the duplicate IDs, and the mislabeled "Add to Cart" control — Mr. Parker could not confirm the rower's specifications, could not reliably activate the purchasing control, and abandoned the transaction.

35. On July 25, 2026, Mr. Parker returned to www.roguefitness.com, this time navigating to the product page for the Rogue Echo Ski Trainer. As on the Echo Rower page, JAWS announced multiple product images with no accessible name, leaving Mr. Parker unable to determine the trainer's handle configuration, mounting options, or footprint. When Mr. Parker attempted to review the "Features" section, JAWS encountered empty buttons and anchor elements with no text or alt-tagged image, consistent with SortSite's finding that unlabeled buttons and links

persist across numerous pages in violation of WCAG 2.1 Success Criterion 2.4.4/4.1.2 (Technique F89). When Mr. Parker attempted to navigate to the "Add to Cart" region, JAWS again encountered duplicate element identifiers in the cart-drawer markup, causing it to lose track of which control had focus. Unable to confirm the trainer's specifications, unable to reliably activate the purchasing control, and unable to trust that the "Add to Cart" control had registered his selection, Mr. Parker again abandoned the transaction.

36. On August 24, 2026, Mr. Parker attempted a different strategy: rather than navigating directly to a single product, he visited the Rogue Echo Rower & Rogue Echo Ski Package page, intending to evaluate the bundled configuration. This page presents, for sighted users, a scrollable product layout with images, specifications, and purchasing controls. Navigating this page with JAWS, Mr. Parker found that the product-image region was marked with ARIA attributes that prevented JAWS from announcing the number of images or entering list-navigation mode, consistent with SortSite's finding that numerous pages contain role="list" attributes without required role="listitem" children, in violation of WCAG 2.1 Success Criterion 1.3.1. Portions of the specifications and accessory-selection regions were marked aria-hidden="true" even though they remained visible and clickable for sighted users, consistent with SortSite's finding that this defect appears across numerous pages, meaning those controls were entirely invisible to JAWS. When Mr. Parker attempted to activate the "Add to Cart" control for the bundled package, nothing happened; the underlying href attribute was empty, consistent with SortSite's finding that empty href attributes affect numerous pages, including primary calls to action. Having been defeated by three separate accessibility failures on three separate visits, targeting three different pages of Defendant's Website, Mr. Parker left www.roguefitness.com without being able to purchase anything.

37. The barriers Mr. Parker personally encountered on the Echo Rower, Echo Ski Trainer, and Echo Rower & Ski Package pages are not isolated defects specific to those three URLs; they are individual instances of the same defect categories that Wave and SortSite's automated audits confirm are replicated, page after page, across substantially the entire Website. The missing-alternative-text defect that left Mr. Parker unable to evaluate the rower's frame or the ski trainer's mounting options is present sitewide. The duplicate-ID defect that disoriented Mr. Parker near the cart drawer is present across numerous pages. The empty-href defect that defeated Mr. Parker's attempt to activate the bundled package's "Add to Cart" control is present across numerous pages. In short, whichever page of Defendant's Website a blind shopper using JAWS, NVDA, or VoiceOver attempts to visit, the odds are overwhelming that he or she will encounter one or more of these defects, precisely because they are baked into the Website's shared templates and components rather than confined to any single product listing.

38. Defendant's Website is not a passive marketing tool. It is a fully interactive retail platform central to Defendant's business model, offering product listings, detailed descriptions, specifications, accessory selections, a shopping cart, and checkout functionality. Defendant relies on www.roguefitness.com to market and distribute its products nationwide, including to consumers in New York, and to sell the very products Mr. Parker attempted to purchase, including the Rogue Echo Rower, Rogue Echo Ski Trainer, and the bundled Rogue Echo Rower & Rogue Echo Ski Package.

39. On information and belief, Defendant has operated www.roguefitness.com without implementing WCAG-compliant accessibility protocols, notwithstanding its 2022 notice of nearly identical defects in the Jaquez litigation and the widespread, free availability of automated testing tools such as SortSite and WAVE. Despite long-standing federal guidance and four years of

opportunity, Defendant has not remediated the barriers identified in Jaquez, on the Echo Rower page, on the Echo Ski Trainer page, or on the Echo Rower & Ski Package page. The very same categories of issues — missing alternative text on critical product imagery, empty and unlabeled links, duplicate and non-unique element identifiers, improperly structured list and landmark markup, and accessible names that bear no relationship to visible labels — persist across product listings, category pages, and navigational flows, reflecting a systemic and, in light of the Jaquez litigation, knowing disregard for blind and visually impaired users.

40. Plaintiff's intent to return to www.roguefitness.com is concrete, credible, and ongoing. His interest is not abstract or generalized; it is tied to specific products — the Rogue Echo Rower, the Rogue Echo Ski Trainer, and the Rogue Echo Rower & Rogue Echo Ski Package — specific attempted transactions on specific pages, and specific functional needs arising from his blindness, including the need for properly described product photography, accessible interactive controls whose announced names match what a sighted shopper sees, unique and non-duplicated element identifiers, and a purchasing experience in which primary calls to action actually function for a screen-reader user.

41. Mr. Parker continues to seek the Rogue Echo Rower, a machine he researched and attempted to purchase during his July 9, 2026, visit specifically because its low-impact cardio profile and Echo-series construction quality matched the training regimen recommended by his physician and are not, on information and belief, readily duplicated by mass-market competitors at a comparable price and build quality. Because Mr. Parker cannot visually inspect frame construction, handle configuration, or footprint in person, he depends entirely on an accessible product page — properly labeled imagery, accessible specifications, and a functioning, clearly announced "Add to Cart" control — to complete this purchase. Once Defendant remedies the

missing-alt-text, duplicate-ID, and mislabeled-control defects on that page, Mr. Parker intends to return, evaluate the specifications, and complete the purchase.

42. Mr. Parker also remains interested in purchasing the Rogue Echo Ski Trainer, which he attempted to evaluate during his July 25, 2026 visit. For a blind consumer, the ability to have a screen reader accurately describe handle configuration, mounting options, and construction quality is essential to making an informed purchasing decision about a premium conditioning machine. Mr. Parker intends to revisit the Echo Ski Trainer product page to evaluate these features in an accessible format and complete the purchase once Defendant's Website presents properly described product photography, accessible interactive controls, and reliable "Add to Cart" functionality free of duplicate-ID interference.

43. Plaintiff's need for accessible online shopping is permanent and ongoing. His Retinitis Pigmentosa-related vision loss prevents him from browsing physical retail stores, reading equipment tags, or visually inspecting construction quality. As a result, he relies exclusively on accessible e-commerce platforms to evaluate and purchase products such as those offered by Rogue Fitness, whose Echo-series conditioning equipment — including the Echo Rower, Echo Ski Trainer, and bundled Echo Rower & Echo Ski Package — makes its Website a particularly valuable, but currently inaccessible, resource for blind consumers seeking durable, well-constructed equipment that is not readily available from mass-market alternatives.

## **CLASS ACTION ALLEGATIONS**

45. Plaintiff JEFFREY PARKER brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2):

**All legally blind individuals in the United States who have attempted to access www.lagence.com and were denied equal access to its digital content, product information, and online purchasing functions due to persistent accessibility barriers during the relevant statutory period.**

46. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2):

**All legally blind individuals residing in the State of New York who have attempted to access www.lagence.com and were similarly denied equal access to its offerings due to the same systemic accessibility barriers.**

47. Common questions of law and fact exist among the Class, including:

(a) Whether www.roguefitness.com qualifies as a public accommodation or a service of a place of public accommodation under Title III of the ADA;

(b) Whether the Website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to Defendant's products, services, and support;

(c) Whether Defendant's knowledge of substantially identical barriers since at least the 2022 filing of *Ramon Jaquez,.* establishes that Defendant's ongoing non-compliance is knowing and willful; and

(d) Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

48. Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers — unlabeled and undescribed images, unpausable autoplaying video,

duplicate element identifiers, unlabeled size controls, and broken navigational structures — that affect all Class members.

49. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

50. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the Website's accessibility barriers.

51. Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

52. Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use Defendant's Website and faced exclusion due to its inaccessibility.

## **FIRST CAUSE OF ACTION**
## **(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

53. Plaintiff, JEFFREY PARKER, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

55. Defendant's Website, offered as the digital storefront of its retail business, is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

56. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

57. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, *inter alia*:

(a) A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and

(b) A failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)–(iii).

58. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits his major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)–(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.lagence.com, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility barriers no later than March 2020 through the *Olsen* litigation, and further notice through automated audit findings and industry-standard compliance tools available at all times since. Despite this notice, Defendant has failed to implement WCAG-compliant remediation for more than six years, demonstrating a pattern of disregard for its obligations under federal law.

59. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section "Prayer For Relief" below.

**SECOND CAUSE OF ACTION**
**(Violation of New York State Human Rights Law ("NYSHRL")**

60. Plaintiff, JEFFREY PARKER, on behalf of himself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law § 290 *et seq.*, covers the actions of the Defendant.

62. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

63. Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.lagence.com, within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

64. Plaintiff has visited the Website, www.lagence.com, on a number of occasions and has encountered barriers to his access that persist to this day.

65. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

66. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

67. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a Website that is

inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) not removing access barriers to its Website in order to make accessibility features of the site known to disabled individuals who are sight-impaired; and (iii) refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities — despite having been on notice of substantially identical barriers since the 2020 *Olsen* litigation. This inaccessibility denies disabled individuals who are sight-impaired full and equal access to the facilities, goods, and services that Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

68. Defendant's discriminatory practice also includes "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

69. Established guidelines exist for making websites accessible to disabled individuals. The World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is a well-established guideline for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

70. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass in violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2), and the discrimination continues to date.

71. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and the Subclass, causing irreparable harm.

72. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act, in addition to reasonable attorneys' fees, costs, and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law ("NYCRL")**

73. Plaintiff, JEFFREY PARKER, on behalf of himself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74. Plaintiff will serve notice of this action upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41.

75. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodation, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

76. "No person, because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by any person or by any firm,

corporation, or institution, or by the state or any agency or subdivision." N.Y. Civ. Rights Law ("NYCRL") § 40-c.

77. Article 15 of the N.Y. Executive Law § 292 deems a disability "a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function." As such, Plaintiff is disabled under the N.Y. Civil Rights Law.

78. Defendant discriminates against Plaintiff and the Subclass under NYCRL § 40 as Defendant's Website, www.lagence.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight-impaired.

79. Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against Plaintiff and the Subclass and preventing access in violation of NYCRL § 40, notwithstanding actual notice of substantially the same barriers since the 2020 *Olsen* litigation.

80. Defendant has failed to take any steps to halt and correct its discriminatory conduct against Plaintiff and the Subclass members.

81. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . in any court of competent jurisdiction in the county in which the plaintiff or defendant shall reside." *Id.*

82. Plaintiff and the Subclass hereby demand compensatory damages of five hundred dollars ($500.00) for Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Rights Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law ("NYCHRL")**

83. Plaintiff, JEFFREY PARKER, on behalf of himself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

84. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of any person's . . . disability . . . directly or indirectly to refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

85. Defendant is subject to NYCHRL because it owns and operates the Website, www.lagence.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

86. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated therein to be inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

87. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . [and] any person prohibited by the provisions of § 8-107 *et seq.* from discriminating based on disability [may] not . . . fail to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a . . . right or rights in

question[,] provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

88. Defendant's actions constitute willful, intentional discrimination against the Subclass based on a disability in violation of N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a), in that Defendant has:

(a) constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination, given its actual notice from the 2020 *Olsen* litigation; and/or

(b) constructed and maintained a Website that is sufficiently intuitive and/or obvious that its inaccessibility to blind class members should have been apparent; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members over a period exceeding six years.

89. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as these violations are ongoing.

90. As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed Class and Subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

91. Defendant's actions violate the NYCHRL, and therefore Plaintiff invokes the right to injunctive relief to remedy the discrimination.

92. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense, as well as punitive damages pursuant to § 8-502.

93. Plaintiff is also entitled to reasonable attorneys' fees and costs.

94. Under N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

95. Plaintiff, JEFFREY PARKER, on behalf of himself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

96. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers full and equal access to the products, services, and facilities of the Website, which Defendant owns, operates and controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

97. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly, particularly in light of Defendant's continued non-compliance more than six years after being placed on notice of substantially identical barriers in the *Olsen* litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

(a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

(b) A preliminary and permanent injunction requiring Defendant to take all steps necessary to make the Website fully compliant with the requirements set forth in the ADA and its implementing regulations, in substantial conformance with WCAG 2.1 Level AA, so that the Website is readily accessible to and usable by blind individuals, together with continuing judicial oversight and periodic compliance reporting in light of Defendant's demonstrated six-year failure to remediate following the *Olsen* litigation;

(c) A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and fails to provide access for persons with disabilities as required by the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

(d) An order certifying the Class and Subclass under Fed. R. Civ. P. 23(a), (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

(e) Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed Class and Subclass for violations of civil rights under the New York City Human

Rights Law, the New York State Human Rights Law, and the New York State Civil Rights Law;

(f) Pre-judgment and post-judgment interest;

(g) An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

(h) Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
October 2, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
/s/ Robert Schonfeld
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com